Mr. Justice Walker delivered the opinion of the Court The complainants claim an equitable right to a sum of money collected in Louisiana on the transcript of two judgments rendered in the Hempstead circuit court in favor of Benjamin Clark against Daniel Y. and William Grayson, upon the following state of facts as disclosed by the record :* That Clark (who was in embarrassed circumstances) had for a number of years obtained credit with complainants (who were merchants) and had in the month of December, 1844, an unliquidated account with them, running back to the 29th of April, 1843, to satisfy which and to secure the payment of any further account which might be contracted, he, by parol agreement, transferred and assigned to the complainants said judgments with the further agreement that if, at the time of the collection of said judgments, his account should be less than the sum collected, complainants should pay to him the excess whatever it might be. Under this contract complainants received the transcripts and caused suits to be prosecuted on them against the Graysons in the name of Clark to their use and benefit; that before the suit was determined Clark died and the suit was revived in the name of a -special administrator under the practice in Louisiana, and prosecuted to judgment and recovery, and that defendant, who is the administratrix of Clark’s estate, denies the complainants’ right to receive the money so collected, and asserts an adverse claim to the same. Complainants, to prevent this interference and assert their equitable title to the money so collected, have Sled their bill based upon the foregoing facts, presenting three prominent points upon which they rest their claim to equitable relief.- 1. The indebtedness of the intestate to complainants. 2. The purchase and transfer of the judgments on Graysons. 3. The interposition of the defendant of her mere naked legal title to the prejudice of complainants’ equity. The answer partially admits the indebtedness but may be taken as a general denial of that fact. It denies the transfer of the judgments, but asserts no title to the debts in defendant, and sets up title in one James Taylor by an alleged prior transfer. If this answer be true it is evident that the respondent has no interest in the debt on Graysons and her answer is substantially a disclaimer and goes necessarily to the whole matter in dispute; for it will be seen by reference to the bill that no decree can be taken to the prejudice of the defendant’s intestate’s estate, if it be true that she is not interested in this particular debt. If Taylor is really a party in interest in this contest for the Grayson debt, he should have made himself a party to the suit and asserted his rights, but this he has not done, nor are the facts thus informally brought to the notice oí the court such as to require that the court should take notice of the lack of proper parties and refuse a decree according to the rights of the parties before it. The adverse claim, then, which the defendant attempted to set up in Taylor, can in no other respect affect the case or change the rights of the parties, than to impair the credit and effect of her denial of the allegations of the bill. The answer admits the third ground to be true, so that in the most favorable point of view in which the answer can be taken, there are but two issues open to proof. Is complainant’s account just? And did he purchase the judgments on the Gray-sons ? Upon each of these points the burden of proof is on complainants; and before we attempt to apply the evidence to them, it becomes necessary to settle a preliminary question as to the legality of certain evidence offered in the court below, and to the admissibility of which a question is presented for our consideration. It was objected to the depositions that the interrogatories propounded to the witnesses were leading and for that reason the responses should be rejected as illegal evidence. The circuit court overruled the objections and permitted the evidence to be read. The motion embraced the whole of the interrogatories in each deposition, without attempting to distinguish between such as were or were not exceptionable. A preferable and more convenient practice is to point out in the motion the particular interrogatories deemed exceptionable. By the English practice the depositions would have been referred to the master for his examination and the answers to such exceptionable interrogatories suppressed. By our practice the court is required to perform this office, and in such case it is safest to point out the particular part of the evidence on which the opinion of the court is to be taken. Waiving for the present the consideration of this practice, as in no event can it affect the decision of the court upon the main questions presented, it is sufficient to say that the most the chancellor could have done, would have been to have suppressed such answers as were responsive to leading interrqgatories and suffered the rest to be read; and if upon consideration, there was sufficient legal evidence to warrant the decree, even though illegal evidence might have been improperly received, the decree should not be set aside on that account. (Turner vs. Pattison et al. 5 Dana 292.) Therefore the question as now presented before us is not simply whether some of the evidence should have been excluded, but whether admitting part of it to have been illegal, enough still remains to uphold the decree. That we may determine to what extent illegal evidence may have been admitted, it becomes necessary to examine the evidence itself. But before doing so it may not be amiss to lay down what we understand to be the rule by which to distinguish between legal and illegal interrogatories. Leading interrogatories are such as instruct a witness how to answer on a material point — such as “ did you not see or do such a thing,” or which, embodying a material fact, admits of an answer by a simple negative or affirmative, though the question does not suggest which. (2 Dan. Ch. Pr. & Pl. 1047.) From this definition it will readily be perceived that putting the question in the alternative, “ did you or did you not see” &c., does not necessarily obviate the objection; but the rule re.sts upon the sensible effect which the question may have upon the mind of the witness by indicating the answer it is desired he should make, or furnishing him with one favorable to the point sought to be established. It is to be observed however that leading interrogatories are only objectionable when - they relate to some material point in the case; for questions, which are merely introductory, and which, whether answered in the affirmative or negative, would not be conclusive on any of the points in the «ase, are not objectionable under the above rule. There are also other qualifications of the rule arising out of the deportment of the witness, the peculiar character of the question propounded, the stage of the examination, &c., which must depend upon the peculiar circumstances of each case, and be applied under the sound discretion of the court, for, whilst the law on the one hand will not tolerate such promptings as may induce the witness to give partial evidence, it will not on the other withhold any of the necessary facilities to enable the parties to elicit lull and perfect answers touching any point at issue. An apt illustration of these rules will be found in several of the questions propounded to the witnesses in this case. For instance, the witness Richardson is interrogated thus, “ did or did not William and M. Moss place in your hands for collection a record,” die. Now if the fact of complainant’s placing the record in the witness’ hands was one of the points at issue or tended to prove such issue, notwithstanding the question is commenced, “ did or did not,” it would be leading as coming under that part of the rule which forbids that you should embody the fact to be answered in the question asked. If however this fact of placing the record in the witness’ hands was not a point in issue, but was intended to call the attention of the witness to this as introductory or preparatory to some other question directly bearing upon a point at issue, then it would not be exceptionable. The 1st and 2d interrogatories to this witness might have sufficiently borne upon a point at issue — the purchase by complainants of the judgments, by showing his possession and control , of them — as to have excluded them as evidence, had not the answer admitted this fact; and consequently it was not a fact put at issue by the pleadings. The 5th interrogatory was unimportant; it related to no matter at issue. Taylor was no party to the record, and nothing said or done by him could affect the parties in interest. But the 8d, 4th and 6th interrogatories are unexceptionable. The 3d is as follows: “ For whose use and benefit did you bring suit” &c. ; the 4th, “ upon whom did you call for funds” &c.; the 6th, “ what sum of money did you collect.” These questions were strictly legal, but like those of a different character they relate to matters admitted by the answer. Without consuming time to point out the shade of difference between the numerous interrogatories propounded it may be conceded that the whole of the deposition of Anthony Clark, Taylor Polk, John S. Clark except the 4th interrogatory, M. T. Reed except the 1st and 2d interrogatories, Simon T. Sanders and of Robert L. Phillips except' the 1st interrogatory, are objectionable for one or other of the causes above referred to, or only tend to prove points admitted or not at issue. The 4th interrogatory of John S. Clark is as follows : “ Please examine the account marked Exhibit A. attached to the original bill in this case and state all you know in relation to it.” The first question propounded to the witness Reed merely’tended to show his opportunity for being informed with regard to the accounts. It was simply an inquiry whether he had acted as clerk for complainants and at what time — the answer being in the affirmative. The second was whether Clark had an account there, and if so, “ state what articles he might have purchased.in the account marked A. attached to the bill. There certainly could be no objection to these questions and the answers to them fully establish the account of complainants, which was one of the points at issue. The transfer of the judgments on the Graysons is fully proven by witness Phillips. The first part of the interrogatory was a mere inquiry as to whether he had held a conversation with Clark on the subject of the transfer of the claims on Grayson. This was evidently intended to call the attention of the witness to the subject and no matter how answered, could not be evidence : therefore it was unobjectionable. The second part of the interrogatory is, “ If so, state all he said to you in relation to it.” These two points — the account against Clark and the assignment of the judgments — being established by proof, the other incidental circumstances and facts are sufficiently admitted by the answer. As regards the legal effect oí the transfer and the rights which accrued to the complainants under it, there can be but little doubt but that although the transfer was by parol, it conferred upon the complainants the equitable right to control the collection, to use the name of Clark for that purpose and to receive the money when collected. There are not wanting authorities to establish these positions. In the case of Briggs vs. Dorr, (19 John. 95,) Briggs by parol assigned the claim, on which judgment was obtained in the name of Briggs to the use of Gleason, to Gleason; subsequently Briggs released to Dorr (the defendant in the judgment) Dorr however had been previously notified by Briggs of his parol assignment to Gleason. Woodwaed, judge, in delivering his opinion, said, “ The single point in issue then is whether Gleason had the beneficial interest in the demand on which the judgment was rendered. It is to be inferred from the evidence that the transfer was by parol, which is valid without writing: a delivery of a chose in action for a valuable consideration is sufficient.” And 17 John. Rep. 284, 11 id. 532, 1 id. 580. Judgments in regard to their assignable qualities are mere choses in action. Ford vs. Stewart, 19 John. Rep. 344. The decree is well sustained by the evidence both in regard to the right to redress and the amount of complainant’s demand, so far as the account is concerned, and in these leading essentials sufficiently definite. The account prior to 29th April, 1843, had no connection with the equitable rights of the parties and appears to have been settled. The decree is, however, carelessly drawn and the chancellor, instead of confiding to complainants the settlement and adjustment of costs, charges and expenses incident to the recovery of the debt against Grayson, and allowing- them to strike the balance, should have retained his jurisdiction of the subject matter, until by his decretal orders the facts had been ascertained, and should by his own judgment and decision have settled the balance if any due, or if this had not been done, at least to have settled what were the proper subjects of charge and the manner of adjusting the amount due upon them. In most cases a failure to do this would be sufficient ground for setting aside the decree, that such orders might be made; but under the peculiar circumstances of this case it is deemed unnecessary to do so. As the defendant sets up no claim to this debt nor any part of it, it is not for her to complain that a proper disposition of the fund has not been made. Let the decree be in all things affirmed with costs. A petition for reconsideration was filed and overruled.