CHIEF JUSTICE WILLIAMS
dewyered the opinion op the majority op the court:
By the second item of his will, John I. Jacob devised all his estate, “real and personal, to my (his) executors, the survivor or survivors of them, for the purpose of executing this will.”
“ 3d. All my estate, real and personal, after the payment of my debts, shall be equally divided among my children by three commissioners, to be appointed by and under the supervision of the Louisville chancery court, except as herein directed.
“ 11th. The share of my estate allotted to my son, William R. Jacob, shall be retained by my executors, paying to him during his life, quarter-yearly, the net proceeds of the rents and profits thereof, after deducting repairs, insurance, and taxes, with power to sell any unimproved *113 property in his share for the purpose of investing the proceeds in permanent improvements; but he shall 'have no power to sell or encumber any part of the estate allotted, or the profits thereof, or to anticipate its receipts; nor shall the same be in any way liable for his debts. After his death, the property, with the unexpended avails, shall he conveyed and paid to his descendants, if there be any such living, in the same manner as it would pass by the law of descents if the same were to descend from him. If there be no such descendants, then the same shall be conveyed and paid to his heirs.”
The legal title of W. R.. Jacob’s share remained in the executors as trustees, to pay over quarterly the annual .profits to him, with power to sell unimproved’real estate, for the purpose of-investing the proceeds in permanent improvements.
When the commissioners should divide the estate, as provided in the will, and allot William’s share, still the legal title would remain in the executors, for the purpose of executing the will, which, so far as he was concerned, would be to pay over to him the annual profits during his life, and at his death to convey and pay to his descendants or heirs, in such proportions as they would be entitled to had the estate descended from him to them.
The testator clearly manifested a desire to make the estate as profitable to William during his life as could reasonably be done consistent with the rights of those in remainder, by vesting the power in the executors to sell unimproved estate and vest it in improved; and that he intended to carve out a life estate only to his son William, is quite as apparent from his vesting the legal title in his executors, there to remain until his son’s death, wfithout power of alienation, conditional or otherwise, *114 in him, and then to be conveyed to his descendants or ^ heirs, thereby -clearly making a remainder, which passes by thé will, and not by the law, to William’s descendants or heirs.
It was not intended by the testator that there should be any incongruity in the different items of his will; therefore, the second, third, and eleventh should be construed as consistent'arid harmonious, unless the language disallows this. ’ ' ' •
The second devised all his estate to his executors, for the purpose of executing his will; and so far as William is specially named and provided for, it is found in the eleventh item, and which gives him the profits for life, with remainder to his descendants or heirs. The third clause was, then, evidently intended to specify the portions and manner of the division — that is, equally and by three commissioners, to be appointed and controlled by the chancery court. Having therein provided that the estate was to be divided into equal shares, and by what process this was to be ascertained, except as to some specific devises following, the testator then proceeds with his direction and devise as to each share, making the desired limitations, &c.; and this is umade the more manifest in the twelfth, thirteenth, and fourteenth clauses, by which he directs that the property allotted to his daughter, Susan Maria, and his other daughters, “ shall be held by my executors in same manner as in the eleventh clause mentioned, for the use and benefit of each of said daughters, severally, during her life, * * ' * and after her death to be conveyed and paid to her descendants or heirs, as in said clause mentioned;” and as to property allotted to each of his sons, except John, to be held “ in like manner, for like use of each of said sons, severally, during his life, with lik,e restrictions,” &c., “ and after his death *115 to be conveyed or paid to his descendants or heirs, as in the eleventh clause directedand in the fourteenth clause he restricts John’s interest in the farm devised to him to its use for life, with remainder over.
Thus he had, by subsequent clauses, each, however, referring to the eleventh clause, limited the previous devises to a life estate in all his other children, and no perceptible motive can be seen for exempting William from this general purpose of the testator to give a life estate to his children, with remainder over to their descendants.
Whatever construction, therefore, might have been given to the third clause, uncontrolled by the subsequent clauses, yet, with this manifest purpose of the testator therein appearing, it must be construed as harmonious with the subsequent clauses, or, if inconsistent therewith, it must give way under a familiar rule, that the last will must prevail.
But these devisees in remainder, though taking under the will, and not as descendants or heirs of William, still take precisely the same as though the property had descended by law from him. In other words, had there been children and grandchildren, whose parents were dead, then each child would take a share, and the children of the dead child would take the share their parent would have been entitled to if alive. So, as William left a surviving widow, and but one child and descendant, the widow took a dower interest, as legatee by implication, and the child took the other estate in fee, just precisely as though the property had been owned in absolute fee by William, and he had died intestate.
All these provisions manifest an intention in the testator, that, should any of his sons die, his surviving wife should be endowed, as he devises the remainder to those who would take under the laws of descent from the holder of the life estate.
*116 The authorities are abundant, and need not be recited, to show that William did not take a fee by implication, but only a life estate.
The appellant is entitled, as legatee by implication, to so much as she would have taken from her deceased intestate husband had he owned the estate.
Judgment reversed, for further proceedings consistent herewith.
Judge Robertson, though concurring in the judgment, does not concur in the reasoning herein.