CASES 15–20—PETITION EQUITY—JAN. 26.

Johnson, &c. v. Mary Hall Jacob, &c.
Chas. D. Jacob v. Same.
Mary Tyler, &c. v. Same.
Samuel H. Jones v. Same.
Thos. P. Jacob, &c. v. Evelyn Jacob, &c.
Lizzie Jacob v. Johnson, &c.

APPEALS FROM LOUISVILLE CHANCERY COURT.

1. A WIDOW, AS LEGATEE BY IMPLICATION, IS ENTITLED TO DOWER in an estate which was devised to her husband to be retained by the executors of the testator subject to restrictions for the use and ben-

efit of her husband during his life, and after his death to be " conveyed and paid to his descendants, if there be any such then living, in the same manner as it would ·pass by the law of descent if the same were to descend from him. If there be no such descendants then the same shall be conveyed and paid to his heirs," &c.

2. *The absolute rights of the remainder-men did not vest* in this case until the death of the life-tenant. The life-tenant held during his life with remainder at his death to his descendants or heirs then living.

3. A VESTED REMAINDER is a fixed interest to take effect after a particular estate is spent.

It is an actual estate, and may be sold and the right thereto passed to the purchaser by deed of conveyance.

4. A CONTINGENT REMAINDER is limited so as to depend on an event or condition which is dubious and uncertain and may never happen, or be performed, or not until after the termination of the particular estate. (4 Kent, pp. 202, 205, 206.)

The remainder in this case was a contingent estate.

5. A JUDGMENT AGAINST THE LIFE-TENANT in favor of a stranger destroys the particular estate.

Every thing which bars or destroys the particular estate has a similar effect upon the remainder in as much as it depends upon the particular estate.

6. A JUDGMENT IN FAVOR OF THE LIFE-TENANT against the presumptive contingent remainder-men did not destroy the particular estate upon which the estate in remainder depended—it merely attempted to add to the particular estate the .estate in remainder.

7. *The judgment of the life-tenant against the remainder-men in this case* binds none of the remainder-men who were not parties to the action in which that judgment was rendered, but as between the life-tenant's grantee and those of the remainder-men who were not parties to the former action this case is remanded for further pleadings and preparation, &c.

8. THE DEVISEES TAKE PER STIRPES, AND NOT AS A CLASS, as remainder-men under the following devise, to wit: "After his death the property, with the unexpended avails, shall be conveyed and paid to his descendants, if there be any such then living, in the same manner as it would pass by the law of descent if the same were to descend from him. If there be no such descendants then the same shall be conveyed and paid to his heirs."

9. A DEVISE TO HEIRS is not ordinarily equivalent to a devise to children, or to grandchildren, or to nephews and nieces.

10. THE STATUTE OF DESCENT IS TO BE CONSIDERED AS PART OF THE WILL in this case.

*The testator, by compelling the courts to resort to the statute of descents* to ascertain the objects of his bounty, impliedly makes said statute part of his will, and it may well be accepted as the criterion by which the interest of each of the devisees is to be determined. (Templeton v. Walker, 3 Richardson, 543.) Especially is this the case when it seems evident that those who should prove to be heirs of a life-tenant were intended to take the estate in remainder "in the same manner as it would pass by the law of descent if the same were to descend from him."

MUIR, BIJUR & DAVIE,  
R. W. WOOLLEY,  . . } . . . . . For Johnson, &c.,

CITED

Fearne on Rem., chap. 1, sec. 2, s. p. 5.
Gen. Stats., chap. 8, art. 5, sec. 6; chap. 63, art. 5, sec. 5.
Perry on Trusts, sec. 544, pp. 484 and 486.
4 Bush, 110, Jacob v. Jacob.
8 Bush, 115, Feltman v. Butts.
2 Jarman on Wills, side p. 13.
6 Bush, 648, Brown v. Brown.
4 Kent, 233.          Salk. 229.
5 B. Mon. 427, Adair, &c. v. Smith.
1 Haywood N. C. 234, Glasgow v. Flowers.
2 Hare's Eng. Ch. Rep. 144, Caldecott v. Brown.
3 Allen, 121, Russell v. Loring.
15 B. Mon. 29, Walters v. Crutcher.
18 B. Mon. 329, Williamson v. Williamson.
17 Beavan, 572, Horlock v. Smith.
12 Allen, 359, Atkins v. Albree.
99 Mass. 101, Minott v. Payne.
101 Mass. 571, Delana v. Williams.
102 Mass. 550, Leland v. Haydon.

A. T. POPE,  . . . . . . . . . . . For S. H. Jones,

GIBSON & GIBSON,  . . . . . . . . For C. D. Jacob.

(Briefs not in record.)

WM. F. BARRET, } For Thos. P. Jacob and Richard T. Jacob
JOHN ROBERTS,  }              on cross-appeal,

CITED
1 Roper on Legacies, p. 126, sec. 16.

DUKE & RICHARDS,  . . . For Mrs. Tyler and Mrs. Pope,

Johnson, &c. v. Jacob, &c.

CITED

Fearne's Rem's, 144, 155, 156, 157.
4 Bush, 110, Jacob v. Jacob.

| | |
|---|---|
| 1 Met. 676. | 17 B. Mon. 379. |
| 2 B. Mon. 116. | Story's Equity, sec. 145. |
| 6 Bush, 651. | Mitford's Equity, 173, 174. |
| 4 Kent's Com. 203, 204. | 2 Cruse's Digest, 270. |
| 15 B. Mon. 9. | 8 Bush, 116. |
| 29 Md. 456. | 2 Blackstone, Chitty's, 169, n. 10. |
| 14 B. Mon. 458. | 1 Denio, 166. |
| 18 B. Mon. 380. | 41 N. Y. Rep. 74. |

J. F. BULLITT, . . . . . . . . . For Lizzie Jacob,

CITED

4 Bush, 110, Jacob v. Jacob.
6 Bush, 648, Brown's ex'rs v. Brown's devisees.
3 Richardson, 543, Templeton v. Walker.
2 Jarman on Wills, p. 46.
1 Roper on Legacies, 92, 126, 128.
8 Met. (Mass.) 450, Doggett v. Clark.
9 Met. (Mass.) 148, Tillinghast v. Cook.
3 Pa. St. R. 304, Baskin's appeal.
1 Leigh, 77, Crow v. Crow.
10 Rice's S. C. Eq. R. 10, Campbell v. Wiggins.
31 Conn. 183, Bond's appeal.
33 Conn. 222, Logan v. Acker.
17 Wendell, 119, Bool v. Mix.
11 Gill & F. 123, Alder v. Beall.
11 B. Mon. 32, Lachland v. Downing.
15 B. Mon. 2, Walters v. Crutcher.

H. CLAY, . . . . . . . . . . . For Susan M. Clay,

CITED

4 Bush, 110, Jacob v. Jacob.
4 Kent's Com. pp. 204, 207.
2 B. Mon. 166, Thompson v. Thompson.
5 Mass. 527, Dingley v. Dingley.
1 Denio, 166, Heard v. Horton.
8 Bush, 116, Feltman v. Butts.
18 B. Mon. 370, Williamson v. Williamson, &c.
14 B. Mon. 465, Turman v. White's heirs.
15 B. Mon. 10, Walters v. Crutcher.
12 B. Mon. 656, Moore v. Moore.

JOHN M. HARLAN, ⎱ . . . . For Mary Hall Jacob, &c.,
A. E. WILLSON, . ⎰

CITED

Freeman on Judgments, pp. 151, 513, sec 172.
Civil Code, secs. 55, 91.    8 Iowa, 23, Ralston v. Lake.
9 Bush, 125, Thomas v. Mahone.    9 Dana, 395.
9 Bush, 468, Cov. & Lex. R. R. Co. v. Bowler's heirs, &c.
3 B. Mon. 59.    · 18 B. Mon. 558.
3 Met. 424.    42 Cal. 484.
1 Sch. & Lef. 407, Gifford v. Hart.
6 Sim. 643, Gaskell v. Gaskell.
8 Hamm. 498, Campbell v. Walston.
4 Bush, 110, Jacob v. Jacob.
3 Mar. 254, Porter's heirs v. Robinson.
7 Coldwell (Tenn.) 284, Cowan v. Anderson.
3 McLean, 320, Nelson v. Moore.
19 Cal. 629.    1 Daniell's Ch. Pr. 164.
31 Cal. 273, Joyce v. McAvoy.
13 Gratt. 152, Baylor's lessee, v. Degamelle.
18 Gratt. 684, Faulkner v. Davis.
17 B. Mon. 380, Edwards v. Woolfolk.

JUDGE LINDSAY DELIVERED THE OPINION OF THE COURT.

The 11th clause of the will of the late John I. Jacob is in these words: "The share of my estate allotted to my son William Robertson Jacob shall be retained by my executors, paying to him during his life quarter-yearly the net proceeds of the rents and profits thereof, after deducting repairs, insurance, and taxes, with power to sell any unimproved property in his share for the purpose of investing the proceeds in permanent improvements; but he shall have no power to sell or encumber any part of the estate so allotted or the profits thereof, or to anticipate its receipts; nor shall the same be in any way liable for his debts. After his death the property with the unexpended avails shall be conveyed and paid to his descendants, if there be any such then living, in the same manner as it would pass by the law of descent if the same were to descend from him. If there be no such descendants then the same shall be conveyed and paid to his heirs."

The 12th clause directs certain estate to be set apart and allotted to the daughters of the testator, to be held in trust for them during their respective lives, and at the death of each "to be conveyed and paid to her descendants or heirs as in said last clause directed."

The 13th clause is as follows: "About $30,000 in value of similar property allotted to each of my sons (except my son John) shall in like manner be held by my executors for the like use of each of said sons severally during his life, with like restrictions on his power of alienating, encumbering, and anticipating, and to be alike free from his debts, and after his death to be conveyed and paid to his descendants or heirs, as in the 11th clause directed."

Isaac Robertson Jacob, one of the beneficiaries under this last-quoted clause, died in 1873, leaving no descendants. He devised all his estate, real and personal, to the appellee, Mary Hall Jacob, who is his widow.

The first question to be determined upon this appeal is whether she takes an interest as the widow of Isaac Robertson Jacob in the trust property allotted to him and held for his benefit by the executors of his father's will under the 13th clause thereof.

A question very similar if not identical with this was presented to and determined by this court in the case of Jacob v. Jacob (4 Bush, 110). William R. Jacob, the beneficiary under the 11th clause of the testator's will, died leaving a descendant. His widow claimed the right to be endowed out of the estate held for him for life by the executors of said will. The court held that it was the intention of the testator to give a life-estate in the trust property to each of his children, "with remainder to their descendants." After considering the various provisions of the will relating to the property to be held by the executors in trust, the majority of the court, through Judge Williams, said: "But these devisees in remainder, though

taking under the will, and not as descendants or heirs of William, still take precisely the same as though the property had descended by law from him. In other words, had there been children and grandchildren whose parents were dead, then each child would take a share, and the children of the dead child would take the share their parent would have been entitled to if alive. So as William left a surviving widow and but one child and descendant, the widow took a dower interest as legatee by implication, and the child took the other estate, just precisely as though the property had been owned in absolute fee by William and he had died intestate." "All these provisions manifest an intention in the testator that should any of his sons die his surviving wife should be endowed, as he devises the remainder to those who would take under the laws of descent from the holder of the life-estate."

The construction thus given to the will of John I. Jacob, deceased, seems to be conclusive of the question now before us for determination. But the appellants claim that the fact that I. R. Jacob died leaving no descendants takes this case out of the operation of the rule announced in the case *supra*.

The 11th clause of the will directs that after the death of William the property allotted to him, with its unexpended avails, shall be conveyed and paid to his descendants, if any such shall then be living, "in the same manner as it would pass by the law of descents if the same were to descend from him. If there be no such descendants, then the same shall be conveyed and paid to his heirs."

The 13th clause directs that the trust property held for Isaac R. Jacob by the executors shall after his death "be conveyed and paid to his descendants or heirs, as in the 11th clause directed."

Appellants insist that while it may be conceded that the testator intended that the surviving wife of a son leaving descendants alive at the time of his death should be endowed,

at the expense of such descendants, out of the trust property held by the executors of the will, that he did not intend that the surviving wife of a son dying without living descendants should be endowed at the expense of the collateral kindred constituting the heirs at law of the son so dying.

No sufficient reason has been, or in our opinion can be, suggested for supposing that the testator intended to make such a distinction between the wives of the life-tenants dying with, and those dying without living descendants. The natural and almost inevitable conclusion is, that no such distinction was intended, and unless the language of the devise is such as to show with reasonable certainty that such was his intention, the courts should hesitate to build up such a distinction by construction.

It is argued that if he had intended the trust estate to pass to the collateral heirs of a deceased son in the same manner that it was to pass to the descendant or descendants of such a son the testator would have said in the concluding sentence of the 11th clause of his will: "After his (William's) death the property, with the unexpended avails, shall be conveyed and paid to his heirs in the same manner it would pass by the law of descents if the same were to descend from him."

If the sentence had been thus constructed it would certainly have shown beyond a doubt that no distinction as to the rights of the surviving wives of such of the sons as should die leaving widows was intended to be made.

But the failure of the testator to express his wishes in the simplest and most exact manner does not, in our opinion, support the theory of the appellants. If we adhere to the construction given to this will in the case reported in 4th Bush— and there is no reason sufficient to justify us in departing from that construction—it is necessary that the distinction insisted on should be established by the language used by the testator rather than by his failure to use other and more appropriate language.

He directed that the property devised to William should be conveyed and paid to his descendants, if there were any living, "in the same manner as it would. pass by the law of descent if it were to descend from him. If there be no such descendants, then the same shall be conveyed and paid to his heirs."

How conveyed and paid to his heirs? Just as it was to be paid and conveyed to his descendants if there were any living at the time of his death—that is, "in the same manner as it would pass by the law of descent if the same were to descend from him."

We think it reasonably clear that the testator intended his language to be thus construed. By so construing it the will is made consistent with itself, and the construction indicated accords with the literal import of the language of the devise. Such was the opinion of this court when it said in the case of Jacob v. Jacob, "All these provisions manifest an intention in the testator that should any of his sons die his surviving wife should be endowed, as he devises the remainder to those who would take under the laws of descent from the holder of the real estate."

As the court in that case held that the widow of William R. Jacob, who left a descendant living, took dower in the trust estate held for his benefit by the executors of his father's will, as legatee by implication under the provisions of that will, so in this case for substantially, if not identically, the same reasons we must hold that the appellee, as legatee by implication, under the provisions of the same will, takes dower in the trust estate held by the executors for the benefit for life of her deceased husband.

We therefore conclude that the chancellor erred in refusing to adjudge to her out of the property in controversy the interest or estate indicated.

The second question necessary to be determined is one arising out of the judgment of the chancellor confirming and

upholding the title of the appellee, Mary Hall Jacob, to what is known as the "Michot property."

It appears that her deceased husband expended out of his estate held in fee large sums of money in the erection upon, and in the improvement of the buildings already upon the trust property held for him by the executors of his father's will. He claimed that these expenditures were made with the consent and approval and upon the advice of said executors. He applied by petition to the Louisville Chancery Court to be allowed to withdraw from the operation of the trust so much of the trust property as would compensate him for the amounts of money so expended. He made all those who were then his presumptive heirs parties to his said suit. A judgment was rendered allowing him to withdraw the "Michot property" and declaring it freed from the operations of the trust. Shortly thereafter he conveyed said property to Barret, who afterward conveyed it to the appellee, subject to certain encumbrances.

It is not pretended that any of the adult appellants who were parties to the action in which the judgment in question was rendered have the right to complain that the chancellor in his judgment in this cause upheld the title of Mrs. Jacob.

The counsel for Lizzie Jacob, an infant, contends that the proceedings as to her were irregular, but concedes that the judgment is not void, and that it can not be called in question in a collateral proceeding.

We think it also clear that the judgment as to Samuel H. Jones, another infant defendant to the suit of I. R. Jacob, is not void. It is unnecessary to express an opinion as to whether or not it is reversible.

The principal difficulty in this case is presented by the appeal of the infant children of Lucy Johnson, deceased, who was one of the daughters of John I. Jacob. She was living at the time the judgment withdrawing the "Michot property" from the operation of the trust was rendered, and together with

her husband, R. A. Johnson, was a party defendant to the action.

Her children claim that her interest in the property was in the nature of a contingent remainder, and that as she died before Isaac R. Jacob the right to take passed to them under the will of their grandfather, unaffected by any judgment that may have been rendered against her, and that the judgment relied on to divest them of title is, as to them, absolutely void.

We will first consider whether the remainder was contingent or vested.

It is contended for Mrs. Pope and Mrs. Tyler, and for the heirs and representatives of John Jacob, deceased, the first two of whom are sisters, and the last-named of whom was the brother by the half blood of Isaac R. Jacob, that immediately upon the death of the testator, John I. Jacob, the estate in remainder in the trust property allotted to Isaac R. vested in those persons who were then his heirs apparent. The other parties appellant claim that the remainder was contingent, and that the absolute right to the estate did not vest until the death of the life-tenant. We are of opinion that this latter proposition is the correct construction of the will under which all the parties claim.

A vested remainder is a fixed interest, to take effect after a particular estate is spent. It is an actual estate, and may be sold and the right thereto passed to the purchaser by deed of conveyance. A contingent remainder is limited, so as to depend on an event or condition which is dubious and uncertain and may never happen or be performed, or not until after the determination of the particular estate. (Kent's Com., vol. 4, pages 202, 205, and 206.) The fourth class of contingent remainders, according to the subdivisions of Mr. Fearne, is, " where a remainder is limited to a person not ascertained or not in being at the time when such limitation is made."

The limitation in this case was made when the will of the

testator became operative.    It is plain that the particular persons who would take the estate upon the death of Isaac R. Jacob could not then be ascertained.    Subsequent events have shown that some of them were not then *in esse*.

It was made the duty of the executors, so soon as the life-tenant should die, to convey the trust property to his descendants, if there should be any then living; and if there should be none, then to convey it to his heirs.    It was incumbent upon them to ascertain who were the heirs of the life-tenant (as he left no living descendants), and as soon after his death as that could be done to convey the estate to them.

Among these heirs they found the four children of Mrs. Johnson, and said children are entitled to have their proportionate shares of the trust property conveyed to them.    And it seems to us perfectly manifest that their right to have it so conveyed would not be defeated if it were shown that their mother, during her life, had asserted claim as a presumptive heir of the life-tenant to the interest they now claim in the trust property and sold and conveyed it to a third party; yet, if the remainder over to the heirs of Isaac R. Jacob was a vested remainder, such would be the necessary result.

The language of the devise is so clear that no one can doubt that the trust property was to be conveyed by the executors, immediately upon the death of the life-tenant, to such persons as then constituted his heirs, without regard to any act done or permitted to be done during the continuance of the life-estate by a person who was at the time a presumptive heir, but who died before the death of the life-tenant.    The limitation is in these words: "After his death the property, with the unexpended avails, shall be conveyed and paid to his descendants, if there be any such then living. . . . . If there be no such descendants, then the same shall be paid and conveyed to his heirs."

This is equivalent to saying that if, at the time of the death

of the life-tenant, he has no living descendants, then the execu-
tors shall convey and pay to the persons who at that time shall
fall within the class or description of persons to whom the re-
mainder was to pass—that is, to the persons who should at that
particular time prove to be the heirs at law of Isaac Robert-
son Jacob. It being impossible to ascertain what persons
would fall within this description until the death of the
life-tenant, this would seem to be a case in which the re-
mainder was undoubtedly limited to persons not ascertained,
and some of whom were not *in esse* when the limitation was
made.

To escape the effect of this conclusion it is argued that this
court, in the case of Walters v. Crutcher, recognized as the
true test as to whether the remainder is vested or contingent
the rule "that the present capacity of taking effect in posses-
sion, if the possession were to become vacant, and not the cer-
tainty that the possession will become vacant before the estate
limited in remainder determines, universally distinguishes a
vested remainder from one that is contingent."

But it was afterward and correctly said in the case of Wil-
liamson, &c. v. Williamson, &c. (18 B. Monroe, 368): "This
principle, however general and universal it may be, has no
application in a case like this, where the event which renders
the possession vacant also resolves the contingency upon which
the limitation depends, and makes that certain which was be-
fore uncertain." In the case in hand the death of Isaac R.
Jacob rendered the possession vacant, and also resolved the
contingency upon which the limitation depended.

The case of Feltman v. Butts (8 Bush, 115) is not an
authority against the conclusion that the remainder under
consideration was contingent. In the will under which the
remainder-men claimed in that case the term "heirs" was used
in the sense of children, and the life-tenant had living children
at the time of its date.

In the devise construed in the case of Walters v. Crutcher the word "children" was used, and it was held to be an executory devise, that vested in the persons contemplated as they came *in esse*.

The distinction between a limitation over in favor of the living children, or even the unborn children, of a tenant for life and his legal heirs is recognized by this court in more than one case, and is clearly stated in the cases of Walters v. Crutcher and Williamson v. Williamson.

We hold that the remainder in this case was a contingent estate.

But appellee urges that the judgment in favor of her deceased husband against Lucy A. Johnson bars the claim of her children to any interest in the "Michot property."

It has frequently been held that a stranger to the instrument, by which contingent limitations upon the title to real property are created, may by a judgment regularly obtained against the life-tenant in possession bar the contingent remainder-men. The reason for this rule is obvious. If such was not the rule the deed or will of a grantor or testator might so limit the title passed as to leave the holder of an outstanding and paramount title without remedy, because of his not being able, until after the happening of some remote event, to ascertain the persons against whom to institute his action.

But this reason does not apply in the present case. Here the life-tenant, holding under the title through which these appellants claim, and with full knowledge of all the facts, voluntarily created or attempted to create in his own behalf a claim against the estate of the remainder-men.

As to whether his representatives are entitled to relief in equity, we express no opinion. We merely hold that the rights of these infant appellants were not affected by the judgment against their mother. She had no more right to represent

them in the suit in question than she had to convey away their contingent estate.

Our attention has been particularly called to the cases of Gifford v. Hart (1 Sch. & Lef. 407), Baylor's lessee v. De Jarnette (13 Grattan, 152), and Faulkner v. Davis (18 Grattan, 684). In each of these cases the complainant was a stranger to the title under and through which the contingent remainder-men claimed title.

The case of Edwards v. Woolfolk is not analogous to this. The contest there was about personal and not real property. But in that case the court said that the bar to a contingent remainder results from the rule that "every thing which bars or destroys the particular estate has a similar effect upon the remainder, inasmuch as it depends upon the particular estate."

The judgment in favor of Isaac R. Jacob did not destroy the particular estate upon which the estate of these infant appellants depended. It merely attempted to add to the particular estate the estate in remainder. We are of opinion that said judgment binds none of the remainder-men who were not parties to the action.

The judgments in favor of Isaac R. and Charles D. Jacob are not in the nature of unreversed judicial determinations of the questions arising in the two actions in which they were allowed to withdraw from the operation of the trust certain portions of the trust property. Practically they were both consent judgments.

We have already said that we do not intend to intimate an opinion as to whether, when her case shall have been properly prepared, appellee may or not have relief against these infant appellants. That issue as between these parties has not as yet been litigated. Upon the return of the cause appellee will be allowed to amend her pleadings against these appellants. Until this is done, and the issues between them made up, and the facts connected with the making of the improve-

ments upon the trust property presented in full, we must decline to investigate the questions that may then be properly adjudicated.

We do not concur with the chancellor in his conclusion that the intention of the testator will be fulfilled if property of the value of about $30,000 at the time of the death of the life-tenant be turned over to the remainder-men.

The language of the devise is, "About $30,000 in value of similar property allotted to each of my sons . . . shall in like manner be held by my executors, . . . and after his death . . . be conveyed and paid."

The allotment was to be made by commissioners appointed by the Louisville Chancery Court. When it was made, and the trust property set apart, it became the imperative duty of the executors to hold it for the purposes of the trust during the life of Isaac R. Jacob, and at his death to convey it (the whole of the trust property) to his descendants and heirs. There is no provision in the will from which we can infer that the testator intended that at the termination of the life-estate the executors were to convey and pay about $30,000 in value of this property to the remainder-men and allow any balance that might then remain to pass to the vendees or devisees of the life-tenant.

Subject to the rights of the appellee, as heretofore indicated in this opinion, the appellants are entitled to all the trust property held by the executors for the benefit of Isaac R. Jacob, deceased.

For the reasons and to the extent herein set out the judgment is reversed upon the appeals of the various heirs of I. R. Jacob, deceased, and also upon the cross-appeal of the appellee Mary Hall Jacob, and the cause is remanded for further proceedings and a final judgment not inconsistent with the principles of this opinion. And—

Upon the appeal of Lizzie Jacob v. Johnson and others,

and the various appeals and cross-appeals of the various heirs
of Isaac R. Jacob, deceased, against each other, the court de-
livers the following opinion and judgment:

The question is as to the proper rule by which the trust
property allotted to Isaac R. Jacob, deceased, and held by the
executors of the last will of John I. Jacob, deceased, is to be
partitioned and distributed amongst the various remainder-
men.

The devise controlling this question is in these words:
"After his death the property, with the unexpended avails,
shall be conveyed and paid to his descendants, if there be any
such then living, in the same manner as it would pass by the
law of descents if the same were to descend from him. If
there be no such descendants, then the same shall be conveyed
and paid to his heirs."

The chancellor held that the heirs take as a class of persons,
and therefore that the partition and distribution is to be *per
capita*.

This conclusion is contrary to the opinion expressed by this
court in the case of Jacob v. Jacob (4 Bush, 110), and contrary
to the conclusion we have reached in the case of Johnson, &c.
v. Jacob, just now decided.

In this last-named case this court holds that the testator
intended that this trust property should be conveyed and paid
to the persons who should prove to be the heirs of Isaac R.
Jacob, "just as it was to be paid to his descendants if there
were any such living at the time of his death—that is, 'in the
same manner as it would pass by the law of descent if the same
were to descend from him.'"

This condition is annexed to the alternative devise to the
heirs, as well as to the primary devise to the descendants of
the life-tenant; at least, such seems to us to be the clear import
of the language used. A devise to heirs is not ordinarily

equivalent to a devise to children, or to grandchildren, or to nephews and nieces.

The testator, by compelling the courts to resort to the statute of descents to ascertain the objects of his bounty, impliedly makes said statute part of his will, and it may well be accepted as the criterion by which the interest of each of the devisees is to be determined. (Templeton v. Walker, 3 Richardson, 543.) Especially is this the case where it seems evident that those who should prove to be heirs of a life-tenant were intended to take the estate in remainder "in the same manner as it would pass by the law of descent if the same were to descend from him."

The judgment upon this branch of the cause is reversed, and the cause remanded for a judgment conforming to this opinion.