Chief Justice Robertson
delivered the Opinion of the Court.
Doe, on the demise of eight persons claiming to be the surviving children of Catharine Patterson, deceased having, in an action of ejectment, obtained a judgment against Thomas Turner, for eight thirteenths of a tract of land containing about fifty acres — each party prosecutes a writ of error to reverse the judgment, and presents various questions for revision by this Court.
It appears from the bill of exceptions, that Jesse Patterson, who held ah obligation on one Mobberly, for a conveyance of the legal title to the tract of land which is the subject of controversy in this suit, sold the land to John Turner, his father-in-law, to whom Mobberly made a deed, in 1809; that Patterson and wife continuing to live on and enjoy the use of the land, with the permission of Turner, and without being charged with rent, he made the following disposition of it by his last will, admitted to record in January, 18131
That a dedimus is blank as to the county in which the depositions are to be taken, & also, as to the magistrate authorized to take them, is not an available objection to the depositions.
Though a deposition may contain some interrogatories rather leading if its would he substantially the same without the answers to those interrogations a refusal to reject it will not be good ground for a reversal.
“ Item — to my daughter, Catharine Patterson, I give, her and her children, the fifty acres of land they now live on, “ to each an equal part;” that Patterson and wife still continued to occupy the land until sometime in the year 1815, when they sold and conveyed their interest therein to Thomas Turner, the defendant in the court below, referring expressly to John Turner's Will as the source of their title; that, when the testator died, his daughter Catherine Patterson had seven children living, of whom two died in infancy during her life; — that she had five more, of whom, also, two died whilst they were infants, and after her death; that she died in 1830, her husband and ‘ten of her children surviving her; that Turner continued to occupy the land, claiming it as his own, from about the date of his purchase to the institution of this suit — a period of not quite twenty years; and that the eight how surviving children of Catharine Patterson are the lessors, together with Samuel Reid, who is described as the husband of one of them.
Upon this state of facts, the Circuit Court instructed the jury that, if the lessors had a right to recover, they were entitled to eight undivided thirteenth's of the entire ¡tract of land: to which instruction, both parties objected, and Turner also excepted.
That instruction presents the principal ground of controversy in this Court. But before we proceed to consider it, we will first dispose of some preliminary and minor points urged by Turner against the judgment.
First. Having objected, on the hearing in the Circuit Court, to the reading of some depositions which purported to have been taken in Missouri, he now insists that the Court erred in overruling his objections: which were, (1) that some of the interrogatories were leading; .and (2) that the dedimus, under which they had been taken, was blank as to the county in which they were to be taken, and also as to the magistrate authorized to take them.
But we concur with the Circuit Court in the opinion that the objections were unsubstantial, and merely tech *294 nical. The dedimus gave authority to any justice of the peace of the State of Missouri, and that was all-sufficient for every rational or practical purpose; and if any of the questions contained in any of the depositions were such as are called leading, they were but few and but slightly leading; if so at all; and had the answers to all such been expunged, the material facts would have remained in full force.
In ejectment on the demise of husband and wife, the title being in the wife, proof of the marriage is not essential.
Proof of declarations of co-lessors, made before suit brought or intended, may be sufficient evidence of the marriage of a member of their family.
Lis mota, as an objection to declarations, does not apply where the declarations were against the interest of the party making them.
There being no evidence from which a jury might infer that an ejectment was barred by time, there was no error in refusing instruction; on that point.
Second. Turner also complains that the Circuit Court refused to instruct the jury, that there could be no recovery oil the demise of Reid and wife—because, as his counsel insists, there was no proof of Reid’s intermarriage with one of the female lessors, or of the fact that the marriage was anterior to the date of the demise.
This objection, also, is unsubstantial. If Reid had hot intermarried with one of the lessors, the demise was not affected by the error of associating his name with that of a proper lessor who had title; and moreover, the evidence was sufficient, in our opinion; to authorize the inference that Reid was the husband, and was married at the date of the demise. The declarations of members of the family of Jesse Patterson were, for that purpose; competent evidence; and those declarations being made by two of the co-lessors, before the Commencement of this suit, were not inadmissible on the ground that they were made when this suit was contemplated. It does not appear that there was such a lis mota as should render them incompetent; and the more especially, as it was not the interest of the declarants to state that their sister was married; and therefore, the general rule as to the incompetency of declarations made, as to marriage or pedigree, by a member of the family, in favor of his own interest, post litem motam, does not apply to the declarations proved in this case.
Third. He also insists that the lapse of time might have operated as a legal bar, and that therefore, the Circuit Court erred in refusing to instruct the jury, as requested, hypothetically, on that point.
But there could have been no error in that respect, because, as Turner entered under the deed from Pat *295 terson and wife, and that deed showed that they held under the will of John Turner, the jury could not have inferred that there had been an adverse occupancy for twenty years; and more especially, if, as will appear presently, the lessors had no cause of action until after the death of Catharine Patterson.
Either party may avail himself of exceptions taken by the other to show that instructions he did not ask for, but objected to, were given.
Children is a term of purchase, not of limitation; and being used; in a will, with, nothing indicating that heirs, was meant, by it —thus: ‘To my daughter C. P. I. give, to her and her children, the 50 acres &c. to each an equal part, imports that they are to take equal shares as tenants in, common—the mother and seven children eight shares And no time being fixed by the will, for enjoyment by the children, or for partition, the estate vests, at the testator’s death, in the mother and children then living. But—The terms, C. P. is to have no more than the fifty acres of land above stated’—that being all devised to C. P. and her children, explain the devise, supra, and show that the intention of the testator, was that his daughter (C. P.) should have the whole for life — her children the remainder: which is, therefore, the true construction of the will.
Upon the death of the testator, (supra) the remainder vested, eo instanti, in the children then living. But, as there is nothing in the devise to restrict it to the children then born’’ those born after the testator’s death, cannot be excluded: the remainder opened, and vested in each after-born child, as it came in esse.—And, the remainder having vested in the devisees upon the death of the testator — a devisee dying subsequently, his interest does not survive to the survivor, but passes to the heir at law.
Having thus disposed of the objections made by Turner alone, we will, as before suggested, now consider the only remaining point, and that on which both parties ask a reversal of the judgment.
But here we are met with an objection in limine. Turner insists that the antagonist party has no right to complain in this Court, because, as he says, he (Turner) alone excepted to the opinion of the Circuit Judge, and moved for a new trial. In this too he must be overruled; because, his own exception shows the fact, that both parties objected to the instruction; and, as he had himself, objected to it, a formal exception on the other, side would not have resulted in a withdrawal of it; and therefore, to entitle the. lessors to, complain here, nothing more was necessary than to show, as they have done, by the record, that they, not only did not ask, but objected to the instruction given ex officio by the Circuit Judge.
We. will therefore decide this, the only, remaining point deemed worthy of special notice, upon the writ of error prosecuted by each party — the one contending that they were entitled to more than the instruction, conceded to them, and the other insisting that they were not entitled to. as much as. the, jury gave, in obedience to that instruction.
*296 The decision of this question depends altogether on the proper interpretation and effect of the devise to Catharine Patterson and her children.
Children, being a term of purchase and not of limitation, when, as in this case, there is no qualifying circumstance indicating that it was used synonimously with heirs — :the devise to Catharine Patterson and her children, “to each an equal part” — imports that the mother and her children should hold the land as tenants in common. And as no time was fixed by the testator for enjoyment by the children, or for partition, and as, therefore, the legal effect of the devise would be, that that they were entitled to take as soon as the testator died, the law would, prima facie, restrict the right to those children who were living at that time. 1. Rop. on Leg. passim, and Buffan vs. Bradford, 2. Atk. 221.
Such should be the interpretation of the devise if- it stood unaffected by the context. But there is another clause in the will, which shows — consistently with'the tenor of the devise itself and with the testator’s probable purpose — that he intended to devise to the mother a life estate, and to her children the remainder; for in a subsequent part of the will, he says, “ Catharine “ Patterson is to have no more than the fifty acres of “land above stated:” thus clearly implying that the mother should have the whole of the land during her life, remainder to her children — “each an equal part.” And this is, in our opinion, the true legal effect of the will, when reasonably construed, so as to make the whole harmonious.
Upon the testator’s death, the remainder vested, eo instanti, in the children then living, because there is nothing in the will indicating a different intention, and because the law does not favor such a construction as will make a devise executory or contingent, and persons able to take a vested remainder were in existence when the life estate commenced.
But as there is nothing in the devise which can restrict the remainder to the children in whom 'it- first Tested, and as “ children,” without qualification or lim *297 itation, included such as were born after the death of the testator, as well as those then living, the remainder opened and vested in each subsequent child as it came in esse; and, having once thus vested in all the children born during the particular estate, it did not survive upon the death of any one of them, but descended to the legal heir of such decedent. Devisme vs. Mello, 1. Brown C. C. 537, Ed. by Belt; Stanley vs. Wise, 1. Cox, 432; Wilmot vs. Wilmot, 8. Ves. 10; Fearne’s Ex. Dev. 555, 7th Ed.
An estate devisee to a grandchild by its maternal grandfather, is not an estate derived from its mother, in the sense of the act which provides that a father shall not inherit the estate of his infant child derived from its mother: estate so derived, may go to the father, upon the death of the devisee.
Then, as the remainder had, during the particular estate, vested in twelve children, and their mother’s interest ceased at her death, the land, at that time, was, according to the will, divisable into twelve equal parts. And, four of the twelve children having died whilst they were infants and without issue, their interest descended to their surviving father; for the estate divised to them by their maternal grandfather, was not derived from their mother in the sense contemplated by the sixth section of the statute of 1796 (1. Stat. Law, 563,) which provides that the father shall not inherit estate of his infant child derived from the mother. This point has been heretofore so decided in the case of Duncan vs. Lafferty's Adm'r. et al. (6. J. J. M. 47,) and we are yet satisfied with that exposition of the said sixth section of the act of 1796.
Consequently, as all the father’s interest inured to his alienee Turner — the lessors had a right to recover eight undivided twelfth parts of the land in controversy, instead of eight thirteenths.
Wherefore, it is considered that the judgment of the Circuit Court be reversed, and the cause remanded for a new trial. And as there is no error to the prejudice of Turner, he must pay the costs of both writ? of error,