## Williamson, et al. v. Maynard, et al.

(Decided February 12, 1915.)

### Appeal from Pike Circuit Court.

1. Wills—Vested Remainders.—A devise to one for life, and at his death to his children, then living, and those which may be born to him thereafter, creates a vested remainder at the death of the testator, in the children then living, and a vested remainder in each one of those born thereafter, as they come into being.

2. Wills—Life Estates—Contingent Remainders.—A devise to one for life, and at his death to his heirs, creates a contingent remainder in the heirs, because one can not have heirs until he is dead, and it is uncertain who his heirs may be.

3. Wills—Vested Remainders.—A vested remainder passes upon the death of the remainderman to his heirs, or to his vendee or devisee.

4. Wills—Rmaindermen—Uncertainty.—The uncertainty as to whether or not the remainderman will live until the termination of the particular estate, upon which the enjoyment of his estate depends, does not make his interest a contingent one.

5. Wills—Construction—Intention.—The intention of the testator as to when an estate is to vest, is the rule by which to determine when it does vest, and this is to be determined by the terms used, and the rules established by the adjudications of the courts for construing devises.

6. Wills—Possession—Remainders.—The present capacity of taking possession, if the possession was to become vacant, distinguishes a vested from a contingent remainder.

7. Wills—Construction.—As a rule of construction, the words of the testator should be taken as expressing his meaning, unless it shall appear from the context, or from his will taken as a whole, that he does not use such words in their generally accepted meaning.

8. Wills—Contingent Remainders.—A contingent remainder is one limited, so as to depend on some event or condition, which is dubious or uncertain, and which may never happen or be performed.

9. Wills—Vested Remainders.—A vested remainder may be created in property devised to an executor for the use and benefit of

certain persons, if the devise has the other essentials necessary to create a vested remainder.

C. M. WHITT and ROBERSON & COOPER for appellants.

F. W. STOWERS for appellees.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

Benjamin Williamson, Sr., died a short time previous to February, 1879, domiciled in Pike County, Kentucky, leaving a last will and testament and codicil thereto, the construction of which, in part, is the subject of controversy in this action. His widow was named Esther Williamson. He also had a grandson whose name was Benjamin F. Williamson, and whose wife, yet living, also, bore the name of Esther Williamson. By the codicil to his will, the testator devised a portion of land to his widow, Esther Williamson, during her life, and another portion he devised the use and occupancy of to his grandson, Benjamin F. Williamson, during his life, and to Esther, the wife of Benjamin F. Williamson, if she should outlive her husband, during her life and widowhood. Esther Williamson, the wife of the testator, died after her husband, but a good many years ago. Benjamin F. Williamson and his wife, Esther Williamson, have several children, whose names are Clint Williamson, Mary Smith, and Floyd Williamson, who are yet alive. They also had a son, C. W. Williamson, who is now dead, and who left no children. Benjamin F. Williamson and his wife, Esther, had a daughter, also, Laura T. Slater, who is now dead, but left one child surviving her, who is Benjamin Slater. Benjamin F. Williamson and his wife, Esther, are still alive.

In the will of Benjamin Williamson, Sr., as first published by him was clause seven, which related to his grandson, Benjamin F. Williamson, and his wife and children, and was as follows, namely:

"Seventh: All the lands I own on Long Branch and Lick Branch of Big Creek, I give to the children of my grandson, Benjamin F. Williamson (son of Mitchell). This devise is to his children now in being, and such as may be hereafter born to the said Benjamin F., and the said Benjamin F. may use and occupy the said lands for the sole purpose of supporting and raising and supporting his children to mature age, and for no other purpose, and in the event of his death, his wife may occupy it for

the same purpose so long as she remains an unmarried widow, but no longer. And the lands are charged with the payment of one thousand dollars to my estate, to be paid out of the rents and sales of timber from said lands, the parts from which the timber is taken and the rents devised, to be in discretion of the executor of this will. And as the children of Benjamin F. arrive at mature age or marry, they are each to be permitted to occupy convenient situations on the said lands, the one thousand dollars charged to be realized within three years."

The codicil to the will was as follows:

"I, Benjamin Williamson, Sr., of Pike County, Kentucky, do make, publish and declare this to be a codicil to my last will and testament, that is to say: All of paragraph the seventh, bequeathing my lands on the Long Branch and Lick Branch of Big Creek, is cancellled and the following is substituted in place thereof:

"I give and bequeath to my wife, Esther Williamson, all of the lands on the Long Branch of Big Creek during her life time, commencing from the upper end of the field, above the Ground Hog Hollow at a Mulberry, including all forks in said bounds from *their* to the head of the said Long Branch.

"In the event of her death to revert to the executor of this will, in trust for the children of Benjamin F. Williamson, as set forth below.

"To my grandson, Benjamin F. Williamson (son of Mitchell), I grant permission to use and occupy the following described land for the sole purpose of supporting himself, and raising and supporting his children to mature age, and for no other purpose, and in the event of his death, his wife may occupy it for the same purpose and of no other purpose as long as she remains an unmarried widow, but no longer. Said land to commence at the lower end of the Big Hill field and etc., etc.    *    *    *    *

"The remainder of the land I own on the said Long Branch, and likewise that portion bequeathed to my wife, Esther, at her death, and also that portion set forth to be occupied by Benjamin F. Williamson and wife, at their death, or in the event of the said Benjamin F. Williamson's death, and his wife marrying, as above stated, I give to the children of my grandson, Benjamin F. Williamson (son of Mitchell), this devise is to his children now in being and such as may hereafter be born to the said Benjamin F. This land to be in the discretion of the executor of this will, and as the children of the said Ben-

jamin F. Williamson arrive at mature age or marry, they are each to be permitted to occupy convenient situations on the said lands.

"The land I own on said Long Branch, below the boundary to be occupied by Benjamin F. Williamson, is reserved in the hands of the executor of this will for the purpose of paying taxes which have or may accrue on said lands, and to pay to the said Benjamin F. Williamson two hundred dollars to discharge such outstanding debts as may now be against him, and towards purchasing him a set of blacksmith tools. Also to pay the one thousand dollars chargeable to my estate as set forth in paragraph No. 10, of this will.

"To enable this executor of this will to pay said amounts, I have sold to my sons, Wallace J. and Floyd E., sufficient standing poplar trees on said Long Branch to make twenty thousand feet, linear, said trees to be choice and selected with a view to average when cut 31 inches in diameter or upwards, on the following conditions, viz.:

"This portion of my estate to be charged with fifty dollars for every thousand feet, linear, and the said Wallace J. and Floyd E. Williamson to pay for said timber at the rate of six cents per cubic foot for one-half of such timber at the mouth of said Long Branch. (The charge above mentioned $50.00 on each 1,000 ft, to be retained by W. J. and F. E. Wmson.)

"Said Wallace J. and Floyd E. Williamson are granted the privilege to build dams in said Long Branch and the right of way over said lands to enable them to get said timber out.

"All rents and overplus that may accrue from the sale of this timber after discharging the obligations as set forth are to be retained and held in trust by the executor of this will for the benefit of the children of Benjamin F. Williamson at maturity. The lands I own on the Lick Branch of Big Creek, known as the Harman Reid Branch, are to be disposed of as set forth in paragraph the fifteenth of this will."

These provisions created a life estate in Benjamin F. Williamson and his wife, Esther Williamson, to be terminated by their deaths, or by the remarriage of Esther Williamson, if she should outlive her husband, in the portion of the lands described in the clause of the codicil devising to them the use and occupancy of such lands.

C. W. Williamson, who was a son of Benjamin F. Williamson, married one Minnie V. Maynard, and after

the death of Esther Williamson, the widow of the testator, C. W. Williamson, upon his own motion, or by the direction of the executor of the will, it does not appear which, moved upon the land that had been devised to Esther Williamson, widow of the testator, during her life time, and lived thereon until his death. He left no children nor heirs at law, other than his father and mother, but before his death he made and published a will, by which he devised all of his property to his wife, Minnie V. Williamson; and thereafter Minne V. Williamson died intestate, leaving no heirs except her father, W. H. Maynard, and her mother Arminta Maynard, who, under the laws of descent, inherited her property received by her from any source, except from one of her parents or grand parents, in equal moities.

Since that time W. H. Maynard has died intestate, leaving as his only heirs at law his children, E. G. Maynard, Rush Maynard, Effie Day, Grover Maynard, Ida Maynard, Robert Maynard, Lesley Maynard, Virgil Maynard, and Inez Maynard. After the death of C. W. Williamson, his widow, Minnie V. Williamson, claimed to be the owner of an interest in all of the lands mentioned in the codicil of the will, by reason of a devise of same to her by her husband, C. W. Williamson. After her death, her father, W. H. Maynard, and Arminta Maynard, her mother, claimed to own the interest formerly owned by C. W. Williamson in the lands, by inheritance from their daughter, Minnie V. Williamson. Since the death of W. H. Maynard, his children are claiming to be the owners of the moiety, which they claim that their father, W. H. Maynard, inherited from his daughter, Minnie V. Williamson. Minnie V. Williamson, during her life time, and her father and mother since her death, have claimed the right given by the codicil to C. W. Williamson, to occupy a portion of the lands under that clause of the codicil which says: "This land to be in the discretion of the executor of this will, and after the children of the said Benjamin F. Williamson arrive at mature age or marry, they are each to be permitted to occupy convenient situations on the said lands."

As a result of the proceedings under a forcible entry and detainer warrant, in which W. H. Maynard and Arminta Maynard were the complainants, and Benjamin F. Williamson, the defendant, in the Pike Circuit Court, the Maynards acquired the possession of that part of the land which had been occupied by C. W. Williamson after

his marriage, it being the same land which had been devised by the testator to Esther Williamson, his widow, during her natural life. At this stage of the proceedings, this suit was filed in the Pike Circuit Court by Benjamin F. Williamson, and Esther Williamson, his wife, Clint Williamson, Mary Smith, and Floyd Williamson, his living children, against W. H. Maynard, Arminta Maynard, Benjamin Slater, a grandson of Benjamin F. Williamson, and Wallace J. Williamson, executor of the will of Benjamin Williamson, Sr., and by an amended petition since the death of W. H. Maynard, against his heirs, in which the plaintiffs pray a construction of the codicil to the will, and allege that the interest of C. W. Williamson in the lands in controversy was a contingent one, and that having died before the life tenants, his father and mother, that he had no vested interest in it, and that his will conveyed nothing of the lands to his widow, Minnie V. Williamson, and that the Maynards, who claimed by descent from her, were not lawfully in possession of the portion of the lands held by them, and had no right or title to any interest in the land. They, furthermore, allege that the children of Benjamin F. Williamson who may be alive at the termination of the life estate of Benjamin F. Williamson and his wife, are the owners of the remainder interest in the lands, and would take same in fee simple at the termination of the life estate of Benjamin F. Williamson and his wife, Esther Williamson; and that under said will and codicil a partition of the lands cannot be had until the death of Benjamin F. Williamson and his wife, Esther Williamson. It is also alleged by the plaintiff that the executor of the will is entitled to the control of the lands, subject to the terms and provisions of the codicil, but just how far, and to what extent he had control, they are not advised, and they ask the court to construe the will and codicil, that the respective rights and claims of all parties to the suit be definitely ascertained and fixed, and to determine what rights, if any, the Maynards have in the lands, and whether or not the lands or any portion of them can now be divided, and between what persons. The defendant Maynards interposed a general demurrer to the petition and amended petition, and upon a hearing, the court adjudged that the will and codicil created in each of the children of Benjamin F. Williamson a vested remainder, and that C. W. Williamson had an interest which he could devise by will, and that the question of possession and occupancy had been determined

by tne forcible detainer proceedings, and as there had been no appeal from the judgment in that case, that it was binding on the court, and that the issue as to occupancy could not now be raised; that a partition of the lands could not be had until the death of Benjamin F. Williamson and wife; that the demurrer should be sustained. To this the appellants excepted, and prayed an appeal to this court.

We presume that the charges made by the testator against the part of his estate mentioned in the codicil, have all been removed in the manner therein directed, as there is nothing said upon that subject in the petition.

It seems that the prime question to be determined on this appeal is the character of the estate, if any, had in the lands by C. W. Williamson. If the interest, owned by him, was vested before his death, he had such an ownership in the property as would pass by will to his devisees, or by the law of descent, if he had died intestate; but if his interest in it was a contingent remainder and contingent upon his living longer than his father and mother, who were two of the life tenants upon a portion of the land, and having died before the termination of their life estate, he would have had no interest of any kind in the land which would pass by descent to his heirs, if intestate, or that he could devise by will, if he died testate, as he did.

The intention of the testator as to when an estate devised is to vest, is the rule to determine, when it does vest, and this is to be determined by the terms used, and the rules established by the adjudications of the court for construing devises. Grigsby v. Breckinridge, et al., 12 B. M., 629.

In the case of Johnson v. Jacob, 11 Bush, 656, it is said: "A vested remainder is a vested interest to take effect after a particular estate is spent. It is an actual estate and may be sold and the title thereto passed to the purchaser."

In the case of Grigsby v. Breckinridge, supra, it was also held: "That a vested remainder may be valid to take effect upon the determination of a particular estate, and that it may vest before the happening of the event which gives the right of possession."

This court has also held that the present capacity of taking effect in possession, if the possession was to become vacant, and not the certainty that the possession will become vacant, before the estate limited in remainder

determines, universally distinguishes a vested remainder from one that is contingent. Bowling v. Dobyns, 5 Dana, 442; Williamson v. Williamson, 18 B. M., 368.

It is, furthermore, a well settled rule that it is not the uncertainty of the remainder interest, ever taking effect in possession, that makes a remainder contingent. A contingent remainder has also been defined to be a remainder limited, so as to depend on an event or condition which is dubious or uncertain, and which may never happen or be performed. Johnson v. Jacob, *supra*.

In the case of Turner v. Patterson, 5 Dana, 292, the devise was: "To my daughter, Catherine Patterson, I give her and her children the fifty acres of land they now live on, to each an equal part."

In that case, although there was not, as in this case, an expressed devise to the children then in being, as well as those that might be born thereafter, this court held, that in as much as the fifty acres of the land was all that was given to the mother, that she had a life estate therein, and that each of the children, whether then born or born thereafter, under that devise, had a vested remainder interest, and not a contingent one.

The court in that case used this language: "Upon the testator's death, the remainder vested, *eo instanti,* in the children then living, because there is nothing in the will indicating a different intention, and because the law does not favor such a construction as will make a devise executory or contingent, and persons able to take a vested remainder were in existence when the life estate commenced. But, as there is nothing in the devise which can restrict the remainder to the children in whom it first vested, and as 'children' without qualification or limitation, included such as were born after the death of the testator, as well as those then living, the remainder opened and vested in each subsequent child as it came in esse; and having thus once vested in all of the children born during the particular estate, it did not survive upon the death of any one of them, but descended to the legal heir of such decedent."

In the case at bar, the lands devised in the codicil of the will all seem to adjoin. The lands devised to the widow of the testator, Esther Williamson, during her life time, at her death vested in the executor of the will for the use and benefit of the children of Benjamin F. Williamson. The testator then proceeds to set apart another boundary of the land, which he describes by

metes and bounds, upon which he grants permission to his grandson, Benjamin F. Williamson, to occupy and use as long as he lives for the purpose of maintaining himself and his children until they should arrive at years of maturity, and in the event of his death, to his wife Esther, if she then be living, for the same purpose so long as she may live, or she ceases to be a widow. He then bequeaths the lands which he has devised to his wife, Esther, for life, at her death; and the portion that he set apart for the use of his son, Benjamin F. Williamson, and his wife, at the death of the longest liver of them, or the remarriage of his wife, if she shall live the longer, as well as all of the other lands not included in these two portions, which he owned on Long Branch, to the children of Benjamin F. Williamson, to those then in being and such as might thereafter be born to the said Benjamin F. Williamson. He then directs that all of these lands shall be under the control and direction of his executor, and as the children of Benjamin F. Williamson arrive at mature age, or marry, they are each to be permitted to occupy convenient situations upon the lands. He then devises the lands owned by him on Long Branch, below the boundary that was set apart to Benjamin F. Williamson for life, to his executor for the purpose of paying taxes, which had or might thereafter accrue on the lands, and also to pay to Benjamin F. Williamson, two hundred dollars, and to discharge the one thousand dollar charge which he had settled upon this land.

It will be noted that in this codicil the word heirs of any person, nor issue of body, nor bodily heirs, or any similar words of any kind are used. The testator used the word children in every instance. Neither is there anything in the codicil, or in the entire will, which could lead to the conclusion that in the codicil he used the word children with the meaning attached to the word heirs. As a rule of construction, the words of the testator should be taken as expressing his meaning, unless it should appear from the context, or from his will taken as a whole, that he does not use such words with their generally accepted meaning. A different rule applies in determining whether a remainder interest is a vested or contingent one when the word children is used in describing the remaindermen, from the rule which prevails when the word heirs is used as descriptive of the remaindermen.

The cases relied upon by appellants as showing that the remainder interest attaching to the children of Ben-

jamin F. Williamson is a contingent interest and not a vested one, are the cases of Williamson v. Williamson, 18 B. M., 329; and Runyon v. Hatfield, et al., 157 S. W., 17.

In these cases it was held that the remainder interest in litigation was a contingent one, but in each of these cases the remaindermen were described as the heirs of the life tenant, and not as children of the life tenant.

The courts have held that where a devise to a certain person for life, and at such person's death to his heirs, the estate in remainder does not vest until the death of the life tenant, because no living person can have heirs, and in addition to that, there can be no certain way of knowing who any person's heirs may be until the death of such person, as the heirs may be all collaterals, and far removed from the life tenant in point of blood or may be in the ascending or descending scale; but by the adjudicated cases, the great weight of authority is, that where a devise is to one for life, and at his death to his children, that it creates a vested remainder in the children upon the death of the testator unless the entire will taken as a whole should show that the testator makes use of the word children, when he means and intends heirs. Turner v. Johnson's Executors, et al., 160 Ky., 611. In the case at bar, the codicil describes some of the children of Benjamin F. Williamson to be then in being, and the petition does not disclose the fact, if any of them were born after the death of the testator. If they were all in being at the death of the testator, then each of them was capable of taking possession of the lands, if the life tenant should die, and in the light of the case of Turner v. Patterson, *supra,* if any of them were born after the death of the testator, the remainder interest would open and vest in each one of those subsequently born. The mere fact that the right of the remainderman to enter into the possession of the property is contingent upon his living longer than the life tenant, is not such a contingency as makes the remainder a contingent one, but it is the present capacity to take possession, if the life tenancy should expire, that determines whether the remainder interest is a vested or contingent one. Bowling v. Dobyns, 5 Dana, 442.

The fact that any one of the children of Benjamin F. Williamson might probably die before the end of the life tenancy, would not make the remainder interest owned by such child a contingent one. It appears from the entire will and codicil that the testator did not intend

to leave any portion of his estate undisposed of, and to each branch of his family he devises the portion of his estate which he intended should pass to such branch of the family; and it is, furthermore, to be observed that in the codicil he abstains from making any disposition of the remainder interest which he devised to his great grandchildren, the children of Benjamin F. Williamson, in the event of the death of any one of them without leaving children. It cannot be presumed that the testator contemplated that one of the remaindermen would die before the ending of the life estate. It cannot be presumed without actual words to the contrary that he did not intend that the interest which he devised to the remaindermen should not be a vested one. It further appears that Benjamin Slater, one of the defendants in this case, is a son of one of the children of Benjamin F. Williamson, who died before the life tenancy expired. According to the rule insisted upon by the appellants in this case, and if that view should prevail, this infant appellee would be deprived of any portion of the lands in controversy, because his mother died before the life estate expired, and if she acquired no interest under the will of her great grandfather, she had no interest to pass to her heirs, and it should not be presumed that in view of the fact that in the other clauses of the will the testator made particular provisions to secure some portion of his estate to all of his other descendants, that he intended that this one should receive nothing. The fact that the lands are to be held by the executor of the will for the use and benefit of the remaindermen does not prevent the remainder interest from vesting upon the death of the testator, nor make such interests contingent ones.

We are therefore of the opinion that the interest acquired by C. W. Williamson, under the will and codicil, was a vested one, although the quantity of his interest can not be determined until the expiration of the life estate enjoyed by Benjamin F. Williamson and his wife, Esther Williamson, under the provisions of the will and codicil. Such interest being a vested remainder, passed by his will to his wife, Minnie V. Williamson, and upon her death, intestate, passed to her heirs. A right to occupy some portion of these lands after he became married, was also a right which C. W. Williamson had under the provisions of the codicil, and that right likewise passed by his will to his devisee, and by the laws of descent, from her to her heirs.

The testator having in three places in the codicil provided that the lands mentioned in the codicil should be under the direction and control of the executor of his will for the use and benefit of the remaindermen, and expressly providing that the title to that portion devised to his widow, Esther Williamson, for life, should at her death revert to his executor, and the further reason that the codicil provides that the remaindermen, upon arriving at years of maturity, or becoming married, shall be permitted to occupy convenient situations on the lands, and does not provide that any portion of it shall be alloted to them in severalty; and for the reason that no practical division can be made until it can be definitely known how many children Benjamin F. Williamson may have, and which can not be known until his death, leads us to the conclusion that no partition of the lands between the remaindermen can be had, or was intended by the testator, until the expiration of the life estates of the father and mother of the remaindermen. Such of them as may arrive at years of maturity, which time we deem to be when they become twenty-one years of age, or shall marry, will be entitled, in the discretion of the executor, to be exercised by him in a just and equitable way, so as to carry out the intentions of the testator, to occupy some portion of the land, outside of the portion devised to Benjamin F. Williamson and his wife for life, upon such terms as to quantity and location as may be equitable between them, and the heirs of such of them as may die before the death of Benjamin F. Williamson and his wife, or her remarriage after his death, if she should live the longer, and the vendees of such of them as may sell their interests before the termination of the life estates above mentioned, will be entitled to the same privilege, but such privilege of occupancy and use, nor the judgment as to the possession in the forcible and detainer proceedings, will not affect the rights of the parties to an equitable division of the lands at the termination of the said life estates.

It is therefore adjudged that the judgment appealed from be affirmed.