## Caudle et al. v. Eckles et al.

March 12, 1940.

Ira D. Smith, Judge.

White & Clark for appellants.

Trimble & Trimble, W. H. Southall, Taylor & Milam and Richard Priest Dietzman for appellees.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The court is called upon to construe the term "legal representatives" in relation to a devise of land in remainder. The construction determines whether it was a vested or contingent interest. If the former, then the appellants never acquired title since their immediate predecessor had power to convey and did so. If he had a contingent interest, then his conveyance was ineffectual and appellants are successors in title to a substantial interest in 400 acres of land.

When J. R. Caudle died in 1911, he was survived by his widow and one son, T. E. Caudle, who had three children, namely, Frank, Julien and J. R., Jr. He bequeathed to his widow his personal estate except the farm stock and implements on a 400 acre farm upon which his son lived. He gave that personal property to his son's wife. By the fourth clause of his will, testator devised his home place of 600 acres to his wife for her life, "and after her death to be equally divided between my three grandsons, Frank B. Caudle, J. R. Caudle, Jr., and Julien Caudle, or their legal heirs." The fifth clause of his will is as follows:

"The remainder of my real estate, consisting of about 400 acres, including the McComb and Woolridge land and 20 acres of detached land adjoining R. C. Crenshaw's place near Pee Dee, Kentucky, all of which is known as the T. E. Caudle Place, and on which he and his family now reside, I devise to said T. E. Caudle during his lifetime and after his death to his legal representatives."

This farm was mortgaged in 1916 by T. E. Caudle, with his mother and three sons joining in the execution of the instrument. Other liens accumulated. In 1923, the farm was sold under foreclosure proceedings to the appellee, A. H. Eckles. Other parties appellee hold substantial mortgages on the property executed to them by Eckles. Testator's son, T. E. Caudle, died in 1928. He had no other children than the three sons above named. One of them, Julien, died intestate in 1922, leaving his father as his sole heir. Another son, J. R., Jr., died in 1926, leaving as his heirs four children, Howard, J. R., III, Amos and Nancy, of whom two were infants. The third son, Frank, is living. The four children of J. R. Caudle, Jr., brought this suit claiming that upon the death of the life tenant, T. E. Caudle, title to the property passed to his surviving son, Frank, and the plaintiffs as T. E. Caudle's "legal representatives." They prayed for an accounting of rents and a decree of sale, with division of the proceeds. The trial court construed the term "legal representatives," as used in the will of J. R. Caudle, to mean "children born and to be born to his son, T. E. Caudle," and held that his three sons living at the time of testator's death took a vested estate in remainder in the land, subject to be opened up by the birth of other children to T. E. Caudle. Since there were no other children and the father of plaintiffs and the other two sons had joined in the execution of the mortgage which resulted in the sale of the property to Eckles, the plaintiffs had no interest in the land.

The appellants maintain that the term "legal representatives" means "legal heirs" in a technical sense, and since no one is the heir of the living the phrase was intended by the testator to designate only such of the son's descendants as should be alive at T. E. Caudle's death. Therefore, it is submitted his three sons had only a contingent estate; and as their father (one of the

scns) predeceased him, they, the plaintiffs, were and are his legal representatives or distributees and entitled to cne-half of the property. It is argued that the term cannot be given the meaning of "children," because the testator had devised his 600 acre farm to his son's children by name, and if it had been his intention to restrict the remainder title of the 400 acre farm to them he would have so expressed it. It is also argued that the term cannot be given the meaning of "heirs" in the popular sense of children and grandchildren, because testator had used the term "legal heirs" in the other clause and "legal representatives" in this one, and thereby expressed a different intention and disposition. Opposing arguments submitted by respective counsel for appellees are that the term must be given the meaning of "heirs" in the popular sense of children, or the estate of the life tenant.

The courts have often been presented with the same perplexing problem of construing "legal representatives." Always, of course, the construction must depend upon the nature and context of the instrument in which the term is used, its association, the subject matter, and other relevant surrounding circumstances. The several series of Words and Phrases show that in wills the words may mean those persons entitled to take by inheritance, or executors or administrators, or children, or lineal descendants as may be determined from the context and entire will. The textbooks reflect the same. Alexander on Wills, page 1256; Thompson, Construction of Wills, Sections 147, 148.

The term is often used interchangeably with "personal representatives," i. e., executors or administrators, and that is sometimes said to be the primary meaning. Alexander on Wills, Section 858; 69 C. J. 224; 9 R. C. L. 25. We have construed the term in a fire insurance policy providing payment of indemnity for loss of property to the owner's "legal representatives," if he had died, to mean his personal representatives for distribution to whoever was entitled to the money. Oldham's Trustee v. Boston Insurance Company, 189 Ky. 844, 226 S. W. 106, 16 A. L. R. 305. But that is different from a devise of land. When used in a will, unless it is otherwise clear, we think the meaning of personal representatives should not be ascribed to the term. That

would merely give the fiduciaries the authority to use the property for the discharge of decedent's debts and dispose of the residue according to his will or to the statute of descent and distribution as the case might be. That would also import the power of testamentary appointment in the life tenant. If the subject matter is real estate, and if the court can discern an intention to dispose directly of the beneficial estate, or to indicate the specific objects of the devise, the idea of personal representative must certainly be discarded. That intention is manifest in the will before us.

Some of counsel for appellees submit that the devise to the son's "legal representatives" means to his estate and, therefore, that the property was subject to his debts, and particularly to the warranty of his mortgage, so that appellants as a matter of fact would be entitled to nothing. The disposition was of the home of testator's son and his family. In disposing of the 600 acre farm, testator had passed over the son. He gave him only a life estate in the 400 acre farm and gave his wife all its equipment. Confidence in the son's business capacity was evidently lacking. To hold that testator intended the remainder interest to go to his son's estate and thereby enable him to convert his life estate into a fee by the simple process of incurring debts, payable at his death, would thwart his manifest purpose. The object was clearly to preserve the home for his son and his family. Testator's confidence in his grandsons to save the home seems to have been misplaced, however, for they joined their father in plastering the place with liens to the amount of about $30,000. But that is beside the point. The question, it seems to us, is resolved into whether the devise of the remainder was (1) to T. E. Caudle's heirs in the sense of all his children as a class, or (2) to his heirs in the technical sense of distributees under the statute of descent and distribution.

The problem of construing a doubtful provision in a will is always approached with certain conceptions or attitudes. One is the presumption that the testator intended to make an entire disposition of his estate and not to die intestate as to part of it. Another is the preference for finding an estate to have vested instead of remaining contingent if no violence to testator's lan-

300

guage would be done. Whether the instrument was drawn by a lawyer, presumably familiar with the technical meaning of legal terms, or by a layman using them in their popular sense, is also an important consideration. In this will, if "legal representatives" of the son should be given the meaning of those who should take under the statute of descent and distribution, then it must be said that the testator intended to make no specific devise of the remainder. And that interpretation would also be in opposition to the favor of vesting the title for, of course, it could not be told who would have title until the death of the life tenant. The will was written by a banker, who probably recognized no distinction or difference between "legal heirs" and "legal representatives." He used "legal heirs" in disposing of the title in remainder of the farm devised to his widow for life, and "legal representatives" in disposing of the remainder in the farm devised to his son for life. There is no indication that testator did not intend to direct the same destination of title or that he did not use the words as synonyms. When a person has or will probably have children, the layman generally understands that they are his legal heirs and the idea of remote inheritors is not entertained. So the conception of "heirs" or "legal heirs" as "children" as a class is realistic and practical. It is sustained by the decisions. Turman v. White's Heirs, 14 B. Mon. 560, 566; Tucker v. Tucker, 78 Ky. 503; Cecil v. Cecil, 161 Ky. 419, 170 S. W. 973; Walden v. Smith, 179 Ky. 829, 201 S. W. 302. These are but a few of many cases so holding. To ascribe that meaning here is the logical conclusion, reached by the application of the several rules of interpretation above mentioned, and we believe arrives at the intention of the testator. This conclusion is supported by at least two of our decisions.

In Hall v. Ayers' Guardian, 105 S. W. 911, 913, 32 Ky. Law Rep. 288, we had for construction a fraternal life insurance certificate which provided for its payment to the insured's wife and two daughters, by name, as beneficiaries, if living at the time of the insured's death; "otherwise the legal representatives or assigns of said deceased member shall be entitled in equal parts." When the insured died his wife and one of the daughters were dead, the latter leaving a child. Construing

the policy along with Section 655 of the Statutes, providing that the lawful beneficiary or his legal representatives "shall be entitled to its proceeds against the creditors and representatives of the person · effecting the same," we held that as the policy of insurance was testamentary in character, the insured's grandchild, as the legal representative or heir-at-law of the insured, was entitled to one-half of the proceeds, that being what her mother would have received had she survived the insured.

A closer precedent is Lusby v. Taylor, 30 S. W. 396, 17 Ky. Law Rep. 65. Testator, John Tingle, devised his estate to his wife for widowhood or life. He provided that should she remarry then she should have one-third of the estate for life. He directed that at her death his estate should be divided among his three children and his stepchild, by name, and "in case of the death of either before the death of myself and wife, then among their legal representatives," again naming the four devisees. The next clause of the will directed that should his wife remarry the division should be made at that time, subject to the bequest of one-third of the estate for her life, "and at her death her interest in my estate to be divided and inherited," as provided. A short time after testator's death the widow and children agreed upon a partition among themselves and the widow surrendered her life estate and accepted an equal share of the whole, thereby dividing it into fifths. One of the daughters, Ellen, mortgaged her part of the land. After her death her children brought suit questioning her right to mortgage the place, and claiming, as in the case at bar, that the daughter, having died before the life tenant, took nothing and that they as her "legal representatives" acquired title, since the vesting of title in their mother was contingent upon her surviving her mother. We construed "legal representatives" to mean "children," but held that Ellen, having died before the life tenant, did not have a vested remainder; consequently that her mortgage was ineffectual and not binding on her children, who survived their grandmother. The case is authority for declaring the term "legal representatives" to mean "children." However, there is a difference in the character of estate given the child Ellen in that will and the child J. E. Caudle, Jr, in the will

now before us. The Tingle will expressly provided that if Ellen died before the life tenant, the devise should be to her "legal representatives." The Caudle will contains no such contingent clause. It merely gives the farm for life to T. E. Caudle with remainder to his "legal representatives."

Substantially the same conclusion was reached in Stevenson v. Wachovia Bank & Trust Company, 2υ2 N. C. 92, 161 S. E. 728; Miller v. Metcalf, 77 Conn. 176, 58 A. 743; In re Bair's Estate, 255 Pa. 169, 99 A. 471.

We think the chancellor correctly adjudged that the title vested in the children of the life tenant, T. E. Caudle, immediately upon the death of the testator, their grandfather. There were three of the children in being then, but if another had been born the title would have opened and let him in. That would not have changed the quality of the title but only the quantity of each child. Turner v. Patterson, 5 Dana 292; Jones v. Thomasson, 159 Ky. 196, 166 S. W. 1001; Williamson v. Maynard, 162 Ky. 726, 173 S. W. 122.

Wherefore the judgment is affirmed.