OLIVE MILNER, EXECUTRIX OF THE ESTATE OF MAYME SMITH, DECEASED, APPELLANT, v. FRANCES I. DUDREY, RESPONDENT.

No. 4352

June 1, 1961                                    362 P.2d 439

*Foley Brothers,* of Las Vegas, for Appellant.

*M. Gene Matteucci,* of Las Vegas, for Absent Heirs.

*Hawkins, Cannon and Hawkins,* of Las Vegas, for Respondent.

**O P I N I O N**

By the Court, GEORGETTA, D. J.:

This is an appeal taken by the executrix of a deceased partner from a judgment of the trial court holding that the surviving partner had properly exercised an option to purchase the deceased partner's interest in a motel pursuant to terms of the partnership agreement, and determining the amount of money to be paid to the estate.

*Facts:* The facts which are pertinent to this appeal are the following:

1. Mayme Smith, the deceased, and Frances I. Dudrey were partners in the ownership of the DeLuxe Motel, located in Las Vegas, Nevada.

2. Frances I. Dudrey, respondent, resided in Las Vegas, Nevada. Mayme Smith, deceased, resided in Napa, California.

3. The partnership agreement dated 10 July, 1952, contains the following:

Paragraph 3 acknowledges that the capital contributions of the partners were:

| | |
|---|---|
| Frances Dudrey | $25,580.00 |
| Mayme Smith | $42,998.63 |

It was agreed that these capital accounts would subsequently be made equal by either drawing or additional investment.

Paragraph 7 reads as follows:

"7. At the end of the partnership, the partners, each to the other, shall make a true, just and final account of all things relating to their said business, and in all things adjust the same; and all stock, as well as the gains and increase thereof, which shall appear to be remaining, either in money, goods, wares, fixtures, debts, or otherwise, shall be divided between them equally."

Paragraph 8 reads as follows:

"8. In the event of the death of either of the parties hereto the partnership shall immediately terminate and the survivor shall have the option to purchase the share of the deceased partner in the capital and assets of the partnership business as determined from an audit made by the accountant aforesaid, as of the date of death of the deceased partner, and the purchase price shall be the amount which said audit shall disclose and the good will of said business shall be regarded as a partnership asset without value. If the survivor shall elect to purchase the share of said deceased partner such notice of election shall be given in writing to the legal representative of said deceased within fifteen days after the date of death and shall tender therewith a good faith deposit of not less than $10,000.00. In the event

of such purchase the purchase price shall be due and payable in equal monthly installments of $250.00 or more, payable on the 1st day of each month until the balance shall have been paid in full, plus interest on the unpaid balance at the rate of Four Per Cent (4%) per annum. In the event the election to purchase is not exercised, the partnership shall be dissolved according to law."

4. *On 2 June, 1957*, Mayme Smith died in Napa, California. On that day, pursuant to a subsequent audit made by the partnership accountant, the capital accounts of the partners stood as follows:

> Frances Dudrey_____ $22,926.64
> Mayme Smith_____ $38,147.42

This audit also indicates that as of the date of death the total assets were $110,978.06 based upon the value of land and improvements which the auditor carried on the books of the partnership, the land being valued at $15,000.

5. *On 5 June, 1957*, Mrs. Dudrey, the surviving partner, attended the funeral of the deceased partner in Napa, California at which time she saw and talked with William Locarnini, Esq., who had been the attorney for the deceased partner, Mrs. Smith, for many years and who later acted as attorney for Olive Milner, a niece of the deceased, appellant here, when she probated the will of Mayme Smith in Napa, California. On that occasion, Mrs. Dudrey, the surviving partner, consulted Mr. Locarnini regarding the partnership and offered to tender him the $10,000 good faith deposit required by paragraph 8 of the partnership agreement, in order to exercise the option to purchase the deceased partner's interest in the DeLuxe Motel partnership.

6. *On 11 June, 1957*, nine days after death, Howard W. Cannon, Esq., of Las Vegas, Nevada, as attorney for Mrs. Dudrey, the surviving partner, wrote a letter to Mr. Locarnini in Napa, California, which contained the following words:

"* * * Mrs. Dudrey will exercise her option to

purchase the interest formerly held by Mrs. Smith in the DeLuxe Motel. I am advised that a deposit of $10,000.00 will be made forthwith at the First National Bank of Nevada, 730 South Fifth Street, Las Vegas, Nevada, in accordance with paragraph '8' of the agreement between Mrs. Smith and Mrs. Dudrey  *  *  *."

7.  *On 13 June, 1957,* Mr. Locarnini in reply wrote a letter to Mr. Cannon which contained the following words:

"*  *  *  [T]he estate of Mrs. Mayme Smith has been filed and Letters Testamentary in all probability will be issued on June 28th and Miss Olive Milner will be appointed as legal representative at that time.

"*  *  *  (portion omitted) I have made a thorough search of the effects of Mrs. Smith and to date have not found a copy of the contract between Mrs. Dudrey and Mrs. Smith. I presume that the deposit of $10,000.00 is in accordance therewith and as the California law states that the ancillary proceedings be opened in Nevada to consummate the transaction, it will of course necessitate some time before this matter may be closed."

8.  *On 17 June, 1957,* which was the last day of the fifteen-day period specified in paragraph 8 of the partnership agreement, the surviving partner, Mrs. Dudrey, deposited at First National Bank of Nevada, in Las Vegas, a cashier's check for $10,000, payable to the estate of Mayme Smith.

9.  *On 28 June, 1957,* eleven days after the period had expired, Olive Milner, the niece, was issued letters testamentary as executrix of the estate of the deceased partner, Mayme Smith, in Napa, California.

10.  *On 3 December, 1957,* Howard Cannon, as attorney for the surviving partner, informed Joseph Foley, Esq., who represented Olive Milner in Nevada, that certain checks payable to the estate of Mayme Smith were at the First National Bank of Nevada, in Las Vegas.

11.  *On 11 January, 1958,* Howard Cannon, Esq., wrote a letter to Olive Milner, the executrix, tendering the cashier's check for $10,000 and seven other checks in the amount of $250 each. The tender was refused.

12. *After 28 January, 1958,* there was tendered to the executrix each month a cashier's check for $250. These tenders were refused.

13. *On 4 March, 1958,* Olive Milner qualified as ancillary executrix of the estate in Nevada.

14. *On 11 March, 1958,* this action was filed by the executrix, Olive Milner, seeking an accounting, a winding up of the affairs of the partnership and a distribution of the assets thereof.

15. *On 12 April, 1960,* the trial court entered judgment to the effect that the option had been legally exercised by the surviving partner and the price to be paid to the estate for the interest of the deceased partner is $38,147.42.

16. *On 5 May, 1960,* the plaintiff appealed to this court from that judgment.

### POINTS OF LAW TO BE DETERMINED

The issues of law raised on this appeal are the following:

I. *Notice to Legal Representative—Whether or not the notice of the surviving partner of her intention to exercise the option was given to the "legal representative" as provided in the partnership agreement.*

Pursuant to paragraph 8 of the partnership agreement (item 3 of the above stated facts) in order to exercise the option the surviving partner was required to give notice of such election to the legal representative of the deceased partner, in writing, within fifteen days after death.

There now arises the question as to whether or not these words—"legal representative" mean a duly appointed administrator or an executor holding letters testamentary.

The fifteen-day period ended on 17 June, 1957, during which time no personal representative of the deceased had been issued letters of administration or letters testamentary by any court. Letters testamentary were not issued to the executrix named in the will until 28 June, 1957 (item 9 of above stated facts).

Three days after death, the surviving partner verbally informed William Locarnini, Esq., that she desired to exercise the option (item 5 of above stated facts). The partnership agreement specified written notice. Therefore, this verbal notice would not legally exercise the option even if Mr. Locarnini had been a duly appointed personal representative of the deceased.

On 11 June, 1957, nine days after death, and well within the fifteen-day period, written notice was sent to Mr. Locarnini that the surviving partner desired to exercise the option (item 6 of above stated facts). Mr. Locarnini had been the attorney for the deceased partner for a number of years. At the time he received the letter from Mr. Cannon he was the attorney for Olive Milner, the person named as executrix in the will, as he had then been retained by her to file the petition for probate and he continued to represent the executrix after she received letters testamentary on 28 June, 1957. At the time written notice was given on 11 June, 1957, was Mr. Locarnini, or Olive Milner, the legal representative of the deceased partner? The words "legal representative" do not have a definite meaning in the law and should be interpreted in each case in accord with the surrounding facts and circumstances. In the strict technical sense a "legal representative" of a deceased person is an administrator or an executor. In a more broad or liberal sense the words refer to any person who lawfully represents another in any way whatsoever. 52 C.J.S. 1040; Nudelman v. Thimbles, Inc., 225 Mo.App 553, 40 S.W.2d 475.

In at least one case it has been held that the words "legal representative" in a will "may mean those persons entitled to take by inheritance, or executors, or administrators, or children, or lineal descendants." Caudle v. Eckles, 282 Ky. 295, 138 S.W.2d 468, 469.

In this case, if the evident intent of the partners is to be implemented, justice requires that the more broad or liberal meaning be given to these words in the partnership agreement.

Where a certain person is designated in a will as executor, he is the "legal representative" of the deceased even before there has taken place the formality of filing a probate petition and having the court issue letters testamentary. An executor designated in the will acts as the "legal representative" of the deceased when he files a petition to have the will probated. An executor derives his authority from the will by which he is appointed and not from the probate of the will which merely recognizes and confirms the appointment. Even though letters testamentary must be issued before he has general power to act, the letters testamentary issued by the court are primarily evidence of the executor's authority. 33 C.J.S. 904; State ex rel. Huber v. Tazwell, 132 Ore. 122, 283 P. 745; Matter of Bergdorf, 206 N.Y. 309, 99 N.E. 714.

Notice to the attorney of any matter relating to the business of the client in which the attorney is engaged, is notice to the client. 7 C.J.S., Attorney and Client, sec. 69, p. 853; Smith v. Thomsen, 8 Cal.App.2d 603, 48 P.2d 102; Goldston v. Randolph, 293 Mass. 253, 199 N.E. 896, 103 A.L.R. 1117; Perkins v. Public Service Co., 93 N.H. 459, 45 A.2d 210.

In this case notice to the attorney, Mr. Locarnini, was notice to his client, Olive Milner, who was named in the will as executrix and was a few days later issued letters testamentary. The notice given in writing eleven days after death was notice which met the requirement of paragraph 8 of the partnership agreement.

II. *Present Election or Future Prospective—Whether or not the words of the written notice (item 6 of above stated facts) constituted notice that the option is exercised rather than notice that it may be exercised sometime in the future.*

The crucial words here involved are: "Mrs. Dudrey will exercise her option to purchase the interest formerly held by Mrs. Smith in the DeLuxe Motel." The

use of future tense may under some circumstances constitute present action. The word "will" when used as an auxiliary verb (as in the sentence above quoted) is sometimes used in the present tense. The courts have recognized this usage by holding that the words, "I will exercise the option," are equivalent to, I do exercise the option.

The case of Grey v. Nickey Bros., Inc., 5 Cir., 271 F. 249, 251, is a case squarely in point on both facts and law. In that case a telegram, from a party having an option to purchase land, stated: "Will exercise our option. * * *" The owner of the land contended (as respondent contends here) that the words "Will exercise our option" expressed a future intention and therefore was not an unequivocal acceptance of the option. That court held that the telegram constituted a present, definite, unconditional, and unequivocal acceptance of the option. See also Ackerman v. Carpenter, 113 Vt. 77, 29 A.2d 922. Moss v. Cogle, 267 Ala. 208, 101 So.2d 314.

There are two steps, or elements, in the exercising of an option to purchase property. First there must be the decision of the optionee to purchase under the exact terms of the option; and second the communication of this decision to the optionor within the period of the option. An option is exercised by the giving of an unconditional notice that the holder does elect to exercise it. Sneed v. Wood, 24 Ga.App. 210, 100 S.E. 714. The tense used is not always a controlling factor. A factor of greater importance is whether or not the communication indicates an intent to be thereby bound. McNaughton v. Conkling, 9 Wis. 316.

In this case the letter from Cannon to Locarnini, with the statement that $10,000 was being deposited, certainly indicated the intent to be bound by this notice accepting the option.

For all of the above mentioned reasons, in this case the letter from Cannon to Locarnini constituted written notice of present election to exercise the option.

III.  *Tender—Whether or not the tender of $10,000*

*made by the surviving partner was legally sufficient to fully comply with the provisions of the partnership agreement.*

Pursuant to paragraph 8 of the partnership agreement (item 3 of above stated facts) in order to exercise the option the surviving partner was required to tender with the notice a good faith deposit of not less than $10,000.

The letter from Cannon to Locarnini (item 6 of above stated facts) which is the notice exercising the option, stated that a deposit of $10,000 would be made forthwith at a bank in Las Vegas. On 17 June, 1957, the fifteenth day after death, there was delivered to the bank a cashier's check for $10,000 payable to the estate of Mayme Smith. Mrs. Smith died a resident of California. The DeLuxe Motel property was located in Clark County, Nevada, and therefore any money received by the estate of Mrs. Smith for her interest in that property would be disposed of by ancillary administration in Nevada.

In this case the appellant contends that deposit of the cashier's check for $10,000 at the First National Bank of Nevada in Las Vegas was not proper tender required by the partnership agreement because it was not tendered to the executrix, or her attorney, or any of their heirs. This was part of the ancillary estate in Nevada. An ancillary executrix of the estate in Nevada did not qualify until 4 March, 1958. Therefore, during the option period (which ended on 17 June, 1957) there was no ancillary personal representative of the estate in Nevada to whom tender could have been made. The appellant did not object to the tender on the ground that the money was in the form of a check. It is well settled that even though a check is not ordinarily a good medium of tender, such objection may be waived, and it is waived by failure to object on that ground at the time the tender is made, because in the event of exception to the form of the money the party making the tender should have the opportunity of getting the cash and tendering it instead of its apparent equivalent,

the check. 23 A.L.R. 1288, and cases cited; 51 A.L.R. 395, and cases cited; American Oil & Refining Co. v. Clements, 99 Okla. 204, 225 P. 349; Murray v. American Savings Bank, 197 Iowa 318, 197 N.W. 69; Steckel v. Selix, 198 Iowa 339, 197 N.W. 918.

In this case the cashier's check made payable to the estate delivered to a bank in Nevada, where the ancillary administration was required, with written notice to the attorney who had represented the deceased and who, at the time of the delivery, represented the person named as executrix in the will, was legally sufficient tender under the terms of the partnership agreement.

IV. *Amount of Money To Be Paid—Whether or not the sum of $38,147.42 set by the trial court is the proper amount of money for the surviving partner to pay for the interest of the deceased partner in the DeLuxe Motel property and business.*

Pursuant to paragraph 8 of the partnership agreement, the surviving partner had the option to purchase the share of the deceased in two items which were the capital and the assets of the partnership as determined by an audit. The audit made by the partnership accountant indicated that as of 2 June, 1957, the date of death, the capital interest of the deceased partner was $38,-147.42, but it also indicated assets in the sum of $110,-987.06 (item 4 of above stated facts).

The deceased partner had some interest in assets over and above her capital investment, which evidently the trial court did not take into consideration in arriving at the amount to be paid by the surviving partner for the interest of the deceased partner in the DeLuxe Motel property and business.

An examination of the entire partnership agreement discloses that the association of the partners was intended to be strictly a business arrangement. It does not appear that either party intended to make a gift of any assets to the other. The wording of paragraph 7 (item 3 of above stated facts) indicates that at the termination of the partnership each partner was to

receive one half of the full value of all assets—which would be the market value, less liabilities as of that date, and not whatever value had been carried on the books for tax and accounting purposes. This would apply to termination of the partnership by either dissolution or death of a partner.

Paragraph 8 of the partnership agreement (item 3 of above stated facts) insofar as it is in conflict with the wording of paragraph 7, was probably an oversight in draftsmanship.

There is not in the record sufficient evidence from which this court could determine the proper amount for the surviving partner to pay for the interest of the deceased partner. Therefore, it is necessary for us to remand the case to the trial court for the purpose of taking additional evidence to determine the following issues:

1.   What was the market value of all the assets of the partnership, less all liabilities, as of the date of death of the deceased partner?

2.   What amount of money must be paid by the surviving partner as one half of the net market value after adjustment has been made for the difference in the capital accounts of the partners, which at time of death had not been made equal as provided in the partnership agreement.

The judgment of the trial court is affirmed as to the surviving partner's exercise of the option to purchase the interest of the deceased partner in the property and business of the DeLuxe Motel.

The judgment of the trial court as to the amount to be paid by the surviving partner is reversed and remanded for further evidence and decision in accord with the above direction. No costs are allowed.

PIKE, J., and GREGORY, D. J., concur.

BADT, C. J., being absent on account of illness, the Governor commissioned Honorable Frank B. Gregory, Judge of the First Judicial District Court, to sit in his place.

McNamee, J., being disqualified, the Governor commissioned Honorable Clel Georgetta, Judge of the Second Judicial District Court, to sit in his place.